DOWNEY, Judge.
Many of the mobile home unit owners in De Anza Colonies of Margate decided to seek relief from their grievances against the mobile home park owner, De Anza Properties X, Ltd. Accordingly, they formed a voluntary association known as The Colonies of Margate Legal Fund. Apparently the unit owners were solicited for funds to hire counsel to prosecute this suit. Some, but not all, responded and a fund was created. A questionaire sent the unit owners asked for their consent to join the suit as plaintiffs and for an assignment of “any right you may have to any recoveries to the ‘legal fund’ as the legal fund has paid Ms. Tamove and Mr. Luken for their services?” The Chairman of the Fund, Emilio Frank Esposito, signed a retainer agreement with the above named counsel in October 1982, some twelve months before this suit was filed. The agreement[1] reviewed the pending complaints the unit owners had against the park owner and the fee to be paid. Among other things, the agreement stated: “In- the event that there is any monetary recovery, I understand that your expectation is to refund those monetary recoveries first to those persons who have made contributions as to our retainer.”
In 1983 a class action suit was commenced by Tarnove and Luken as attorneys for certain mobile home unit owners on behalf of all of the unit owners of De Anza Colonies of Margate against appellee, De Anza Properties X, Ltd. The legal basis for the complaint as alleged in the second amended complaint was fraudulent misrepresentations, breach of contract, and violation of the Florida Little FTC Act and the Florida Mobile Home Statute. After issue was joined by the pleadings in 1985, the plaintiffs filed a motion to clarify the class or in the alternative for leave to amend the complaint to add additional party plaintiffs. As a result, the court determined that the settlement of another similar class suit by the unit owners against the appellee had so reduced the number of qualified class plaintiffs in this suit as to require decertification of this action as a class action. The court, therefore, ordered the suit to proceed as a nonclass action and authorized joinder of additional plaintiffs, which was accomplished.
In April of 1986 the defendant-owner submitted an offer to settle all matters in controversy. This prompted a meeting of the unit owners at which the majority proposed accepting the offer but a significant minority opted to reject it and to continue the litigation. Thereupon, counsel for the plaintiffs filed a pleading styled, “Request to Declare Authorization for Settlement,” wherein the court was apprised of the difference of opinion among the unit owners *1059 and the existence of doubt as to their authority to settle the case. The trial court directed the plaintiffs to take a poll of the unit owners which, upon being conducted, reflected seventy-seven percent in favor of settlement. Thereafter, the trial court entered a judgment authorizing acceptance of the settlement offer approved by the majority of the plaintiffs, from which a number of the dissident plaintiffs have appealed.
The question presented for appellate disposition is “whether the trial court committed reversible error, in a nonclass action, by disposing of the claims of the individual appellants based upon a ‘majority rules’ rationale.”
It should be remembered that this suit started as a class action with only a few of the unit owners named as plaintiffs and that a large number of the owners were added after decertification of the class. At that point, we have a joinder of a number of individual plaintiffs suing to recover damages arising out of similar circumstances vis-a-vis the defendant. They had authorized the Legal Fund to use their names in the prosecution of the suit and some of them had assigned “any recoveries” to the Fund to help defray the cost of the litigation. Other than that, we fail to find the assumption of any obligation or assignment or giving up of any rights that the individual plaintiffs had in the litigation. Their right to terminate or proceed with the suit could not be exercised by counsel without their consent, as is apparently conceded by their motion for authorization filed by plaintiffs counsel, nor could it be exercised by the trial court. Were this a class action, the court would have authority to take such action, but in an ordinary multi-party suit such as this no such power exists, unless through the authority of the voluntary association known as The Colonies of Margate Legal Fund. However, the appel-lees do not contend the Fund has a written Charter, By-law, or rule that would serve to justify the majority of the Fund membership in exercising the right, over objection of the minority thereof, to settle the case. Instead, appellees refer us to the retainer agreement and the answers to the questionaire as the basis for the right of the Fund and the court to follow the majority rule.
As impractical a result as this conclusion may seem to the Fund majority, we are unable to find any legal authority for divesting these appellants of their right, as unit owners and plaintiffs in this case, to reject what they consider an inadequate settlement and continue the litigation.
We therefore hold the trial court erred in the entry of the judgment appealed from and reverse said judgment and remand the cause for further appropriate proceedings.
REVERSED AND REMANDED, with directions.
HERSEY, C.J., and GUNTHER, J., concur.

. The agreement is contained in a letter from Luken to Esposito and signed by Esposito as Chairman of the Legal Fund under date of October 24, 1982.